UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ECONOMIC ENTERPRISES, INC., | : | |
| DONNA JANE APARTMENTS | : | |
| ASSOCIATES, L.P., AND | : | |
| MARTIN WOLF, | : | |
|     Plaintiffs, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 3:10-cv-157 (VLB) |
| T.D. BANK N.A., | : | |
|     Defendant. | : | February 3, 2011 |

## MEMORANDUM OF DECISION GRANTING
## DEFENDANT'S MOTION TO DISMISS [Doc. #16]

The Plaintiffs, Economic Enterprises, Inc. ("EEI"), Donna Jane Apartments Associates, L.P. ("DJA"), and Martin Wolf, filed this action for damages against the Defendant, T.D. Bank, N.A. The case arises from the Defendant's alleged practice of debiting the Plaintiffs' bank accounts to cover checks written on an unrelated business account containing insufficient funds.

Presently pending before the Court is the Defendant's motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. [Doc. #16]. The Defendant seeks dismissal of only the Third Claim of the Amended Complaint, in which Wolf asserts a right to damages in his individual capacity. For the reasons that follow, the Defendant's motion is GRANTED.

### I. FACTUAL AND PROCEDURAL HISTORY

The Plaintiffs' Amended Complaint alleges the following facts, which are taken as true for purposes of the instant motion to dismiss. Plaintiffs EEI and DJA held separate checking and savings accounts with TD Bank and its predecessor,

Commerce Bank. Compl. ¶ 7. Non-party Corus Pharmacy and Heath Care Products, Inc. ("Corus") also held banking accounts at TD Bank. Compl. ¶ 11. Plaintiff Wolf is the sole shareholder and Chief Executive Officer of EEI, a Connecticut subchapter S corporation which is exempt from federal income tax liability pursuant to 26 U.S.C. § 1362(a). Compl. ¶¶ 3, 37. Wolf is also a limited partner and 16.1% owner of DJA, which is a Connecticut limited partnership, the manager of DJA's building and affairs, and the vice president of Corus. Compl. ¶¶ 12, 38-39. While EEI and DJA are separate entities with separate bank accounts, EEI is the general partner in the DJA limited partnership and 1% owner of DJA. Compl. ¶¶ 7, 26. Corus has no ownership or equity interest in DJA or EEI. Compl. ¶ 12.

Despite Corus' lack of equity interest in or connection with EEI or DJA, "[i]f a check was written on Corus' account containing insufficient funds to cover the Corus check, Commerce's practice was to debit one of EEI's accounts or one of DJA's accounts" to cover the overdraft. Compl. ¶ 13. This practice was adopted by TD Bank upon its acquisition of Commerce. Compl. ¶ 15. Wolf did nothing that would lead Commerce/TD Bank to conclude that its practice was proper and in fact submitted a letter to TD Bank dated March 16, 2008 requesting that the practice be stopped immediately. Compl. ¶¶ 14, 17-19. Despite receiving the letter, TD Bank employees continued the practice. Compl. ¶ 19-20.

As a result of the unauthorized transfers, the Plaintiffs allege that $43,000 was improperly removed from EEI's accounts. EEI claims that the practice caused it to suffer consequential damages of $296,000, related to the decline in value of its 1% ownership interest in DJA and liabilities it incurred as DJA's general partner. Compl. ¶¶ 25-29. It is alleged that as a consequence of the scandal surrounding the

Defendant's unauthorized transactions, the value of DJA fell 30% from its previous value of $950,223. Compl. ¶ 27. The Plaintiffs also allege that the Defendant improperly withdrew $150,223 from DJA's accounts, rendering it illiquid and causing damages in excess of $197,846. Compl. ¶¶ 31-35. Finally, Wolf alleges that he sustained damages personally by the effects of these withdrawals in excess of $75,000. Compl. ¶¶ 37-40.

The Plaintiffs brought suit in this Court on February 2, 2010. [Doc. #1]. The Amended Complaint was filed on February 9, 2010. [Doc. #5]. On March 29, 2010, the Defendant filed the instant motion to dismiss, seeking dismissal of the Third Claim only. [Doc. #16]. Wolf filed his opposition to the motion to dismiss on May 31, 2010. [Doc. #31]. The Defendant filed its reply on May 19, 2010. [Doc. #33].

## II. STANDARD OF REVIEW

The standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under 12(b)(6) for failure to state a claim are "substantively identical." Lerner v. Fleet Bank, N.A., 318 F.3d 113, 128 (2d. Cir. 2003). However, on a motion to dismiss under Rule 12(b)(1), the party invoking the Court's jurisdiction bears the burden of proof to demonstrate that subject matter jurisdiction exists, whereas the movant bears the burden of proof on a motion to dismiss under Rule 12(b)(6). Id. In deciding both types of motions, the Court "must accept all factual allegations in the complaint as true, and draw inferences from those allegations in the light most favorable to the plaintiff." In re AIG Advisor Group Sec. Litig., 309 Fed. App'x. 495, 497 (2d Cir. 2009). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v.

**Iqbal**, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." **Id.**

### III. DISCUSSION

The Defendant argues that the Court lacks subject matter jurisdiction over Wolf's claims because he does not have standing to assert personal claims in this action. Def.'s Mem. in Supp. of Mot. to Dismiss 7, Mar. 29, 2010. "Standing is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented." **Pond View, LLC v. Planning and Zoning Comm'n**, 288 Conn. 143, 155 (2008) (**quoting** **Andross v. West Hartford**, 285 Conn. 309, 321-322 (2008)). "Standing . . . like other jurisdictional inquiries, cannot be inferred argumentatively from averments in the pleadings, but rather must affirmatively appear in the record. To that end, it is the burden of the party who seeks the exercise of jurisdiction in his favor clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." **Thompson v. County of Franklin**, 15 F.3d 245, 249 (2d Cir. 1994) (citations and quotation marks omitted). "The issue of standing implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss." **May v. Coffey**, 291 Conn. 106, 113 (2009). A person establishes standing by showing that he is aggrieved. **Id.**

4

There are two categories of aggrievement in the context of standing, classical and statutory. Pond View, 288 Conn. at 156. Here, the Amended Complaint invokes a classical notion of aggrievement, which requires a two-part showing. Id. First, "a party must demonstrate a specific, personal and legal interest in the subject matter of the [controversy], as opposed to a general interest that all members of the community share." Id. Second, "the party must also show that the [alleged conduct] has specially and injuriously affected that specific personal or legal interest." Id. "[A]s a general rule, a plaintiff lacks standing unless the harm alleged is direct rather than derivative or indirect." Connecticut State Med. Soc. v. Oxford Health Plans, 272 Conn. 469, 481 (2005). When "the harms asserted to have been suffered directly by a plaintiff are in reality derivative of injuries to a third party, the injuries are not direct but are indirect, and the plaintiff has no standing to assert them." Ganim v. Smith and Wesson Corp., 258 Conn. 313, 351 (2001).

In the instant action, Wolf alleges that the Defendant's misconduct specifically and personally injured him due to his status as the sole shareholder of EEI, as a 16.1% owner of DJA, and as the managing partner of DJA. Compl. ¶ 37-39. Wolf's roles as shareholder of EEI and partial owner of DJA will be discussed together, followed by a discussion of his role as DJA manager.

### A. Wolf as Sole Shareholder of EEI and 16.1% Owner of DJA

The Amended Complaint alleges that Wolf is the sole shareholder of EEI and a 16.1% owner of DJA. Compl. ¶¶ 37, 39. The Amended Complaint further alleges that the actions of the Defendant "have [had] a direct impact on Wolf" as a result of his ownership interests in EEI and DJA. Compl. ¶¶ 37-39.

5

The Court will first address Wolf's status as sole shareholder of EEI. "[I]t is axiomatic that a claim of injury, the basis of which is a wrong to the corporation, must be brought in a derivative suit, with the plaintiff proceeding secondarily, deriving his rights from the corporation which is alleged to have been wronged." Fink v. Golenbock, 238 Conn. 183, 200 (1996). "In order for a shareholder to bring a direct or personal action . . . , that shareholder must show an injury that is separate and distinct from that suffered by any other shareholder or by the corporation." Smith v. Snyder, 267 Conn. 456, 461 (2004) (quotations omitted). "It is commonly understood that '[a] shareholder – even the sole shareholder – does not have standing to assert claims alleging wrongs to the corporation.'" Id. at 461-62 (quoting Jones v. Niagara Frontier Transp. Auth., 836 F.2d 731, 736 (2d Cir. 1987), cert. denied, 488 U.S. 825 (1988)). Generally, a reduction in stock value constitutes an injury to the corporation rather than to the shareholders individually, and therefore does not give rise to a direct shareholder action. See May, 291 Conn. at 115-17.

Wolf argues, however, that he has standing to assert a personal claim based upon the alleged harm to EEI because EEI is a subchapter S corporation pursuant to 26 U.S.C. § 1361 and therefore "all of the losses are passed through to him." Pl. Opp., [Doc. #31], at 5. Under federal law, a subchapter S corporation is "a small business corporation for which an election under section 1362(a) is in effect" with respect to a particular taxable year. A "small business corporation" is defined as "a domestic corporation which is not an ineligible corporation and which does not – (A) have more than 100 shareholders, (B) have as a shareholder a person . . . who is

6

not an individual, (C) have a nonresident alien as a shareholder, and (D) have more than 1 class of stock." 26 U.S.C. § 1361(b).

Generally, the effect of electing to be a subchapter S corporation for income tax purposes pursuant to 28 U.S.C. § 1362(a) is that the corporation does not pay taxes as a corporate entity. See 26 U.S.C. 1363(a). Instead, the "taxable income of an S corporation [is] computed in the same manner as in the case of an individual," with certain enumerated exceptions. Therefore, income and losses are "passed through" from the S corporation to its shareholders. As explained in the statute,

> In determining the tax under [Title 26, Chapter 1] of a shareholder for the shareholder's taxable year in which the taxable year of the S corporation ends . . . there shall be taken into account the shareholder's pro rata share of the corporation's (A) items of income (including tax-exempt income), loss, deduction, or credit the separate treatment of which could effect the liability for the tax of any shareholder, and (B) nonseparately computed income or loss . . .
>
> The character of any item included in a shareholder's pro rata share . . . shall be determined as if such item were realized directly from the source from which realized by the corporation, or incurred in the same manner as incurred by the corporation.

26 U.S.C. § 1366(a)-(b); see also William L. Rudkin Testamentary Trust v. C.I.R., 467 F.3d 149, 157-58 (2d Cir. 2006) ("Pass through entities, such as partnerships, S corporations, common trust funds, and nonpublic mutual funds, generally do not pay income taxes at the entity level, but instead pass their tax liabilities on to the ultimate taxpayers – generally individuals."). The purpose of the subchapter S corporation election is to enable small business corporations to avoid double taxation, i.e., taxation on the corporation's profits and taxation on the profits distribution to its shareholders. See Shores Realty Co., Inc. v. U.S., 468 F.2d 572, 575 (5th Cir. 1972); U.S. v. Pirro, 212 F.3d 86, 101 (2d Cir. 2000).

**While Wolf correctly describes the legal status and character of a subchapter S corporation in his memorandum, he fails to cite any legal authority for the proposition that the sole shareholder of a subchapter S corporation has standing to assert a personal claim based upon misconduct that causes losses to the corporation. As the above-cited statutory provisions illustrate, a subchapter S corporation is an election which can be made for tax liability purposes. The "pass through" to which Wolf obliquely refers in his memorandum relates to the pass through of tax liabilities and benefits from the subchapter S corporation to its shareholders. Wolf fails to explain how the pass through of EEI's losses to him impacts the standing analysis. Indeed, rather than being harmed by the pass through of EEI's losses to him, Wolf was actually entitled to receive a benefit by claiming a tax deduction for those losses and thereby reduce his personal taxable income. See Berkley v. Gavin, 253 Conn. 761, 779 (2000).**

**As stated previously, "'[a] shareholder – even the sole shareholder – does not have standing to assert claims alleging wrongs to the corporation." Smith, 267 Conn. at 461-62 (quoting Jones v. Niagara Frontier Transp. Auth., 836 F.2d 731, 736 (2d Cir. 1987), cert. denied, 488 U.S. 825 (1988)). The Amended Complaint fails to allege any injury to Wolf separate and distinct from that suffered by EEI. Therefore, his claim is entirely derivative of EEI's claim, and must be dismissed. The alternative ruling would permit both the corporation and its shareholder to recover for the same loss, requiring complex allocation of damages. See Ganim, 258 Conn. at 352.**

**Likewise, Wolf cannot assert a personal claim based upon the depreciation in value of his 16.1% ownership interest in DJA resulting from the Defendant's alleged**

misconduct. DJA is a limited partnership under Connecticut law. "It is well-established that in most cases an injury to the partnership interest of a limited partner is not direct or independent, and, thus, being derivative in nature, can only be pursued by the partnership itself." Retirement Program for Employees of Town of Fairfield v. Madoff, No. X05CV095011561S, 2010 WL 2106654, at *10 (Conn. Super. Ct. Apr. 16, 2010). Thus, courts have held that claims arising from a diminution of equity based upon loss of the partnership's assets due to the defendants' misconduct belong to the partnership itself rather than to the limited partners individually, who suffered harm only derivatively through the ultimate loss of their investments in the partnership. See e.g., id.; Silveri v. Mirsky, No. 95 Civ. 10234, 1997 WL 473544, at *3 (S.D.N.Y. Aug. 19, 1997); Litman v. Prudential Bache Properties, 611 A.2d 12, 15-17 (Del. Ch. 1992). Here, both EEI, the general partner of DJA, and DJA itself have filed suit to recover the loss in value of DJA resulting from the Defendant's alleged misconduct. Wolf has failed to assert any direct injury to himself that is not derivative of the injuries suffered by DJA, and therefore he is precluded from bringing a direct claim based upon the deprecation in value of his 16.1% ownership interest in DJA.

### B. Wolf as Manager of DJA

Wolf also claims that he has standing as a personally aggrieved party because, as manager of DJA's building and affairs and sole shareholder of EEI, the general partner of DJA, he is potentially liable to the twenty other limited partners of DJA for the Defendant's malfeasance. Specifically, Wolf argues that the other limited partners of DJA could subject him to litigation for his negligence in handling DJA's affairs in order to recover DJA's losses resulting from the Defendant's

9

actions. Wolf does not allege, however, that any of the limited partners of DJA have filed, or have even threatened to file, suit against him as an individual or in his capacity as manager of DJA. Therefore, Wolf's claims of personal injury are speculative and conjectural rather than real and immediate.

It is well-established that "[a]bstract injury is not enough" to satisfy the standing inquiry. City of Los Angeles v. Lyons, 461 U.S. 95, 101 (1983). Instead, the "plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury" as a result of the challenged conduct and "the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." Id. at 102 (internal quotation marks omitted); see also Allen v. Wright, 468 U.S. 737, 751 (1984) (stating that, in order to establish standing, the injury alleged must be "distinct and palpable" and not "abstract" or "conjectural" or "hypothetical"). Where, as here, a plaintiff may anticipate an actionable controversy arising, but the threat to him is not "sufficiently real and immediate to show an existing controversy," the plaintiff has no standing. O'Shea v. Littleton, 414 U.S. 488, 496 (1974).

The cases cited by the Plaintiff are clearly distinguishable because they involve parties who were actually aggrieved and do not address the rights of a "potentially aggrieved party" as Wolf claims to be in this case. See, e.g., Associated Indus. of N.Y. State v. Ickes, 134 F.2d 694 (2d Cir. 1943), vacated by Ickes v. Associated Indus. of N.Y., 320 US 707 (1943) (denying a motion to dismiss and holding that a consumer was aggrieved where an administrative order set prices and stymied competition among the producers from which the consumer was to purchase); Am. Commc'ns Assoc. v. U.S., 298 F.2d 648 (2d Cir. 1962) (granting a Union's petition to challenge the FCC's denial of a motion to intervene where the

10

final administrative order adversely affected the petitioner); <u>Lyon v. Caterpillar, Inc.</u>, 194 F.R.D. 206 (E.D. Pa. 2000) (denying petitioner's motion for class certification on the basis that the petitioner failed to satisfy the predominance of issues requirement of Fed. R. Civ. P. 23(b)(3)).

Moreover, Wolf's concern of potential future litigation against him by DJA's limited partners appears to be unfounded, as he cites no authority to support it and this Court has found none. On the contrary, under Connecticut law, "[a] partnership is an entity distinct from its partners." Conn. Gen. Stat. § 34-313. Pursuant to the Connecticut General Statutes,

> A limited partner may bring an action in the right of a limited partnership to recover a judgment in its favor if general partners with authority to do so have refused to bring the action or if an effort to cause those general partners to bring the action is not likely to succeed.

Conn. Gen. Stat. § 34-34a. Here, both DJA itself and EEI, the general partner of DJA, have brought suit directly against TD Bank to recover damages caused by TD Bank's alleged wrongful actions. If successful in this action, DJA and its partners will be fully compensated for the harm caused to the partnership by the Defendant. Further, should the limited partners of DJA bring personal claims against Wolf arising from the diminution in value of their partnership interests, such claims would likely be derivative in nature and would therefore be barred for the same reasons that Wolf cannot assert a personal claim against the Defendant in this case. <u>See</u> <u>generally</u> <u>supra</u> Section III.A.; <u>see also</u> <u>Retirement Program</u>, 2010 WL 2106654, at *10-12 (holding that limited partners lacked standing to assert claims based upon the diminution in value of their limited partnership interests). Therefore, the limited partners appear to have no claim against Wolf.

Accordingly, the Court holds that Wolf has failed to allege any particularized injury to himself that it separate and apart from the injuries allegedly sustained by EEI and DJA as a result of the Defendant's conduct.  Wolf therefore lacks standing in this action, and his personal claim for damages, asserted in the Third Claim of the Amended Complaint, must be dismissed.

## IV. CONCLUSION

Based upon the above reasoning, the Defendant's motion to dismiss [Doc. #16] is GRANTED.  The Clerk is directed to terminate Wolf as a Plaintiff in this action.  This case will proceed as to Plaintiffs EEI and DJA.

IT IS SO ORDERED.

/s/
Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut:  February 3, 2011